[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12961
_____

D.C. Docket No. 3:15-cv-00427-BJD-JRK


CSX CORPORATION,
ATLANTIC LAND AND IMPROVEMENT COMPANY,
CARROLLTON RAILROAD,
CHESSIE COMPUTER SERVICES, INC.,
CSX INTERMODAL TERMINALS, INC.,
CSX RAIL PAYROLL SERVICES, INC.,
CSX REAL PROPERTY, INC.,
CSX TRANSPORTATION, INC.,
CSX TRANSPORTATION TERMINALS,
CYBERNETICS & SERVICES, INC.,
FRUIT GROWERS DISPATCH, INC.,
FRUIT GROWERS EXPRESS COMPANY,
TOTAL DISTRIBUTION SERVICES, INC.,
TRANSFLO TERMINAL SERVICES, INC.,

Plaintiffs - Appellants,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 21, 2018)

Before WILSON, and JORDAN, Circuit Judges, and MOORE,[*] District Judge.

PER CURIAM:

This case concerns whether the Railroad Retirement Tax Act (RRTA) imposes a tax on (1) a railroad's stock transfers to its employees and (2) a railroad's provision of relocation benefits to its employees.  CSX Corporation (CSX) maintains that neither is taxable and, accordingly, seeks a refund of federal employment taxes paid in 2009 under the RRTA.  On cross-motions for summary judgment, the district court held that both the stock options and the relocation benefits were taxable compensation under the RRTA.  In light of intervening Supreme Court precedent and our plain reading of the RRTA, we reverse and remand with instructions to enter judgment in favor of CSX.

I.

Railroads and their employees are not a part of the Social Security system and do not participate in the Federal Insurance Contributions Act (FICA) taxes that fund Social Security.  Instead, Congress has enacted a separate statutory scheme—

_____

[*] Honorable William T. Moore Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

2

the Railroad Retirement Act—to provide federal pensions and benefits to railroad workers. These pensions are funded through taxes imposed by the RRTA.

At issue in this case is whether the railroad's stock options and relocation benefits were properly taxed as compensation. The RRTA defines "compensation" as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e)(1). Compensation specifically does not include:

> an amount paid specifically—either as an advance, as reimbursement or allowance—for traveling or other bona fide and necessary expenses incurred or reasonably expected to be incurred in the business of the employer provided any such payment is identified by the employer either by a separate payment or by specifically indicating the separate amounts where both wages and expense reimbursement or allowance are combined in a single payment . . . .

*Id.* § 3231(e)(1)(iii).

## II.

The district court's interpretation of the RRTA is a question of law we review de novo. *See United States v. Garrett*, 3 F.3d 390, 390 (11th Cir. 1993). We need only briefly address the issue of stock compensation. The parties agree—and so do we—that the Supreme Court's decision in *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067 (2018), is dispositive. Under *Wisconsin Central*, the phrase "money remuneration" in the RRTA refers only to currency or a medium of

3

exchange. *Id.* Stock options are not a form of "money remuneration" under the RRTA, and therefore are not taxable compensation. *Id.*

*Wisconsin Central*, as well as our plain reading of the statute, guides our resolution of the second issue—whether relocation benefits are taxable compensation under the RRTA. *Wisconsin Central* instructs us to interpret the meaning of "compensation" in the RRTA narrowly. As the Supreme Court explained, the RRTA arises out of a particular time in history when railroads "compensated employees not just with money but also with food, lodging, railroad tickets, and the like." *Id.* at 2070. Congress did not choose to tax these in-kind benefits, even though such benefits are taxed elsewhere in the tax code. Reading the RRTA and FICA side-by-side is illustrative; the former taxes only "money remuneration," while FICA taxes "all remuneration," including benefits "paid in any medium other than cash." *Id.* at 2071.

The issue of whether relocation benefits are taxable compensation can be broken into two sub-issues. The first is whether relocation benefits and moving expenses are forms of *money remuneration* and therefore compensation under the RRTA. While *Wisconsin Central* suggests the answer to this question is no, it is not clear that CSX preserved this issue on appeal. We therefore decline to hold whether relocation benefits—or any other in-kind benefit with the exception of

stock options—can be considered a form of money remuneration under the RRTA and focus our attention on the second issue.

The second issue is, notwithstanding the meaning of money remuneration, whether relocation benefits and moving expenses are excluded from compensation under the business expense provision of 26 U.S.C. § 3231(e)(1)(iii).  That provision excludes from compensation "an amount paid specifically—either as an advance, as reimbursement or allowance—for traveling or other bona fide and necessary expenses incurred or reasonably expected to be incurred in the business of the employer . . . ," and which are substantiated in accordance with the statutory requirements.  *Id.*

The government urges that § 3231(e)(1)(iii) applies only to short-term traveling expenses given the statute's legislative history and the context in which it was enacted.  Conversely, CSX maintains that such a reading contradicts the plain language of the text, which excludes from compensation "an amount paid . . . for traveling *or other bona fide and necessary expenses incurred or reasonably expected to be incurred in the business of the employer . . . .*"  *Id.* (emphasis added).  We agree with CSX.  A straightforward reading of this statute suggests that it covers more than travel.  The government's argument that § 3231(e)(1)(iii) primarily concerns short-term travel is only persuasive if we make inferences from legislative history, but we do not typically "resort to legislative history" when a

5

statute is relatively clear, and we "certainly should not do so to undermine the plain meaning of the statutory language." *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc); *see also CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001) ("The 'plain' in 'plain meaning' requires that we look to the actual language used in a statute, not to the circumstances that gave rise to that language.").

Where the Supreme Court has instructed that we should construe compensation in the RRTA narrowly, and the plain language of the statute excludes *bona fide and necessary business expenses* that meet certain statutory requirements from compensation, we decline to read the statute inconsistently with those commands. Accordingly, we hold that relocation benefits and moving expenses that comport with the statutory requirements of 26 U.S.C. § 3231(e)(1)(iii) are excluded from taxable compensation under the RRTA.

Our decision today does not mean that a railroad can exclude from compensation anything it deems necessary for its business. Section 3231(e)(1)(iii) excludes from compensation *only* certain forms of payments (advances, allowances, and reimbursements), *only* if they are bona fide and necessary business expenses, and *only* if they are substantiated in accordance with the statutory requirements. Whether CSX complied with these statutory requirements is outside

6

the scope of today's decision and may be considered by the district court on remand.

We reverse the judgment of the district court and remand for further consideration of the statutory requirements and the calculation of CSX's taxable compensation in accordance with this opinion.

**REVERSED AND REMANDED.**

JORDAN, Circuit Judge, concurring:

I join the court's opinion, and add the following thoughts with respect to 26 U.S.C. § 3231(e)(1)(iii), a provision of the RRTA.

"In determining the meaning of a statute, a court looks first to its language." *R.R. Concrete Crosstie Corp. v. R.R. Ret. Bd.*, 709 F.2d 1404, 1407 (11th Cir. 1983). In relevant part, subsection (e)(1)(iii) exempts from taxable compensation the amount railroads pay "for traveling or other bona fide and necessary expenses incurred or reasonably expected to be incurred in the business of the employer." This language is undeniably broad, but it is also unmistakably clear; it exempts "traveling expenses" and "other bona fide and necessary expenses" as long as they are incurred or reasonably expected to be incurred in the employer's business. Relocation benefits, in my view, fit comfortably within this broad provision.

We interpret words "consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (citation omitted). When Congress enacted subsection (e)(1)(iii) in 1976, "bona fide" meant "[d]one or made in good faith." American Heritage Dictionary 195 (2d ed. 1976). *See also* Webster's Third New International Dictionary 250 (1981) (defining "bona fide" as "made in good faith without fraud or deceit"). And although "necessary" can mean things that are "essential" or that "must be had," *see id.* at 1510, in tax cases the Supreme Court has "consistently

8

construed the term 'necessary' as imposing only the minimal requirement that the expense be 'appropriate or helpful.'" *Comm'r v. Tellier*, 383 U.S. 687, 689 (1966) (citation omitted).

CSX argues that its relocation benefits are bona fide and necessary expenses, incurred to move qualified and experienced employees where they are needed instead of hiring new ones. The government does not dispute that CSX's relocation benefits are generally bona fide or necessary. Instead, it argues that the statutory text covers only short-term travel, and that relocation benefits do not constitute expenses for such travel.

The government makes two points in support of its position, both of which rely on the structure of § 3231. The government first asserts that the general "traveling or other bona fide and necessary expenses" language of subsection (e)(1)(iii) is limited by a more specific provision in the Internal Revenue Code. Specifically, § 3231(e)(5) states that compensation does not include benefits that an employee can reasonably expect to exclude from his or her income, and references several other sections of the Code, including 26 U.S.C. § 132 ("Certain fringe benefits"), which in turn excludes "qualified moving expense[s]." *See* § 132(a)(6). According to the government, "traveling and other bona fide and necessary expenses" cannot include relocation benefits because the Code already addresses moving expenses in another provision. The government's second point is related to

9

its first.  It says that if we read subsection (e)(1)(iii) to include relocation benefits, such a reading would render subsection (e)(5) superfluous.

The Fifth Circuit recently found these arguments persuasive in *BNSF Railway Co. v. United States*, 775 F.3d 743, 759 (5th Cir. 2015).  There, the railroad also claimed that certain relocation benefits were exempt under § 3231(e)(1)(iii).  The government maintained in *BNSF*, as it does here, that under the specific-general canon and the rule against superfluity subsection (e)(1)(iii) must have a narrower meaning that excludes relocation benefits.  The Fifth Circuit agreed and held "that a more reasonable interpretation of § 3231(e)(1)(iii) permits exclusion of payments to employees for traveling expenses and bona fide and reasonable expenses related to travel," but not relocation benefits.  *BNSF Railway Co.*, 775 F.3d at 759.

With respect, I am not persuaded.  As a general rule, when the relevant language is straightforward, our interpretive function ceases and we should "enforce [the statute] according to its terms."  *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989).  Statutory canons are often useful tools, but they "are no more than rules of thumb that help courts determine the meaning of legislation."  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).  When the plain meaning is clear, that "often vitiates the need to consider any of the other canons."  *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 n.6 (11th Cir. 2001).  *See also New York ex rel. New York State Office of Children and Family Services v. U.S.*

10

*Dept. of Health and Human Services*, 556 F.3d 90, 97 (2d Cir. 2009) (explaining that it is "unnecessary . . . to resort to canons of construction" when the statutory language is clear); *United States v. Roberson*, 459 F.3d 39, 55 (1st Cir. 2006) ("Absent a conflict between the two provisions, resort to the canons of construction (which are, after all, only tools of construction) is unnecessary.").

The terms "traveling," "bona fide," and "necessary" may be broad, but they are not vague. And their plain meaning vitiates any need for us to rely on the specific-general or superfluity canons. *See Penn. Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.").

Even if we were to consider the canons invoked by the government, the drafting history of the two subparagraphs casts doubt on the government's theory that subsection (e)(5) removes relocation benefits from the ambit of subsection (e)(1)(iii). Congress enacted subsection (e)(1)(iii)—then labelled subsection (iv)—in 1976, and its language has since remained unchanged. *See* 90 Stat. 2526, Pub. L. 95-547 (Oct. 18, 1976). Congress did not add subsection (e)(5) until nearly a decade later, in 1984. *See* 98 Stat. 884, Pub. L. 98-369 (July 18, 1984). Subsection (e)(5) has, from its passage, excluded benefits that employees could claim under specific provisions of the Internal Revenue Code, including § 132. But § 132 did not include

11

an exception for moving reimbursements until 1993. *See* 107 Stat. 474, Pub. L. 103-66 (Aug. 10, 1993). Because subsection (e)(5) itself did not include moving expenses until a much later amendment to a cross-referenced provision, there is no reason to believe that Congress intended to exclude moving expenses from subsection (e)(1)(iii) when it enacted subsection (e)(5).

On a related note, nothing in the text of subsection (e)(5) suggests that Congress intended to repeal subsection (e)(1)(iii) *sub silentio*. Absent an explicit statement, later statutes are not presumed to impliedly repeal earlier ones. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007). Courts only infer a statutory repeal when the "later statute 'expressly contradict[s] the original act'" or when "such a construction 'is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all.'" *Id.* (alterations in original) (quoting *Traynor v. Turnage*, 485 U.S. 535, 548 (1988)).

There is no such contradiction here, for subsections (e)(1)(iii) and (e)(5) do not conflict; they both exclude certain benefits from the definition of "compensation." The former excludes expenses that serve the employer's interests (those expenses that are incurred or expected to be incurred in the business of the employer), and the latter excludes expenses that benefit the employee. At most, the subsections overlap, and courts "[do] not hesitate[ ] to give effect to two statutes that overlap, so long as each reaches some distinct cases." *J.E.M. Ag Supply, Inc. v.*

12

*Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001).  Subsection (e)(5) covers moving expenses only by cross-reference to § 132.  It also covers numerous fringe benefits unrelated to travel, including working conditions, employee discounts, and retirement planning services.  *See* § 132(a)(2), (3), & (7).  So subsection (e)(5) will continue to cover far more than subsection (e)(1)(iii) could ever reach.

We expect some overlap in complex statutory schemes like the Internal Revenue Code.  *See Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1068 (D.C. Cir. 2018) ("A little overlap, either by accident or design, is to be expected in any complex statutory scheme with interdependent provisions.").  *See also* Michael Livingston, *Congress, the Courts, and the Code: Legislative History and the Interpretation of Tax Statutes*, 69 Tex. L. Rev. 819, 826-27 (1991) (noting that "[w]hat makes the tax law so complex" is the "maddening way in which the provisions overlap, intersect, and occasionally even contradict each other within a given transaction.").  If we can say anything good about this present state of affairs, it is that overlap provides Congress with the flexibility to change one part of the Code without necessarily undermining a policy choice made elsewhere.  For example, Congress recently chose to temporarily suspend the exclusion for qualified moving expense reimbursements under § 132(g)(6).  *See* 131 Stat. 2088, Pub. L. 115-97 (Dec. 22, 2017).  The overlap between subsections (e)(1)(iii) and (e)(5) gave Congress the room to make that

change for employees without significantly interrupting the practices of railroads under the RRTA.