[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-12494

_____

CSX CORPORATION,
ATLANTIC LAND & IMPROVEMENT COMPANY,
CARROLLTON RAILROAD,
CHESSIE COMPUTER SERVICES, INC.,
CSX INTERMODAL TERMINALS, INC.,
CSX RAIL PAYROLL SERVICES, INC.,
CSX REAL PROPERTY, INC.,
CSX TRANSPORTATION, INC.,
CSX TRANSPORTATION TERMINALS,
CYBERNETICS & SERVICES, INC.,
FRUIT GROWERS DISPATCH, INC.,
FRUIT GROWERS EXPRESS COMPANY,
TOTAL DISTRIBUTION SERVICES, INC.,
TRANSFLO TERMINAL SERVICES, INC.,

Plaintiffs-Appellants,

2                    Opinion of the Court                    20-12494

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:15-cv-00427-BJD-JRK

————————————

Before WILLIAM PRYOR, Chief Judge, LAGOA, Circuit Judge, and
WATKINS,* District Judge.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether relocation benefits provided by a railroad to its employees are exempt under the Railroad Retirement Tax Act as "bona fide and necessary expenses incurred [by the employee] . . . in the business of the employer," 26 U.S.C. § 3231(e)(1)(iii), and if so, what, if any, substantiation requirements apply. CSX Corporation appeals a summary judgment in favor of the United States that relocation benefits for its employees, although incurred in the business of the employer, were not

_____

* Honorable W. Keith Watkins, United States District Judge for the Middle District of Alabama, sitting by designation.

adequately substantiated. The United States argues that the benefits were not incurred in the business of the employer, but if they were, it requests that we remand to determine which substantiation requirements apply. Because the benefits are bona fide and necessary expenses incurred by the employee in CSX's business and there is no requirement to prove or substantiate anything beyond compliance with the statute, we affirm in part, reverse in part, and remand for the district court to calculate the amount of CSX's refund and to oversee the required notification process.

## I. BACKGROUND

CSX and its various subsidiaries operate a network of rail lines throughout the eastern United States. In so doing, CSX requires its employees to move to different locations because of operational consolidations, mergers, promotions, and other business-related reasons. CSX chooses to pay for most of the expenses the relocating employee incurs in moving to the new location. CSX provides benefits such as long-term storage, temporary housing, home-sale and purchase costs, a cost-of-living allowance, a monthly stipend for the duration of the move, career assistance for the employee's spouse, and lease cancellation fees. Some of the relocation benefits are provided in-kind through third parties, and some are provided through monetary payments to cover costs actually or reasonably expected to be incurred by relocating employees.

When CSX first provided the benefits, it treated the benefits as taxable compensation under the Railroad Retirement Tax Act.

The Act imposes on the employer and employee a tax calculated as a percentage of the employee's "compensation." 26 U.S.C. § 3231(e); *see generally id.* § 3201 *et seq.* Section 3231(e) defines compensation as "any form of money remuneration" paid by the employer to the employee "for services rendered." *Id.* § 3231(e)(1).

The Act is similar to the Federal Insurance Contributions Act, which does not govern railroad companies and their employees. *See Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2071–72 (2018). The railroad company collects the employee's liabilities by deducting income from the employee's paycheck and then remits both the employee's and its own portion of the tax to the government. 26 U.S.C. § 3202(a)–(b). Some payments are exempt from the retirement tax, including "amount[s] paid specifically—either as an advance, as reimbursement or allowance—for traveling or other bona fide and necessary expenses incurred or reasonably expected to be incurred in the business of the employer." *Id.* § 3231(e)(1)(iii).

In 2009, CSX deducted and paid to the Internal Revenue Service approximately $1.76 million in taxes for these relocation benefits. CSX later decided that these benefits were exempt because they were "advance[s,] . . . reimbursement[s,] or allowance[s] . . . for traveling or other bona fide and necessary expenses" that were "incurred or reasonably expected to be incurred" by its employees "in the business of" CSX. *Id.* § 3231(e)(1)(iii). The Act limits this exemption to payments "identified by the employer either by a separate payment or by specifically indicating the separate amounts

where both wages and expense reimbursement or allowance are combined in a single payment." *Id.*

CSX sought a refund of the taxes. After the Service refused, CSX sued for refunds of these and other taxes paid on behalf of itself and its employees. In addition to the taxes on relocation benefits, CSX sought refunds for taxes paid on stock transactions, which CSX claimed were not "money remuneration."

The parties stipulated to the material facts and filed cross-motions for summary judgment. The district court held that corporate stock and in-kind relocation benefits were "properly considered" money remuneration by the Treasury Department. And it held that relocation benefits did not fall under the exemption in section 3231(e)(1)(iii) because the exemption covered only those expenses incurred during short-term travel to perform employment duties.

During the pendency of an appeal by CSX, the Supreme Court decided that "money remuneration" in the Act did not apply to in-kind benefits, but instead applied only to compensation that is a commonly used "medium of exchange." *Wis. Cent.*, 138 S. Ct. at 2074. The government conceded on appeal that CSX's stock transactions were not subject to the Act, but it contested the status of CSX's relocation benefits. *CSX Corp. v. United States*, 909 F.3d 366, 368 (11th Cir. 2018) (*CSX I*).

We agreed that corporate stock was not "money remuneration" and reversed the district court on that issue, but we did not

address whether in-kind relocation benefits were "money remuneration." *Id.* at 368–69. On the issue of cash relocation benefits, "we [held] that relocation benefits and moving expenses that comport with the statutory requirements of [section] 3231(e)(1)(iii) are excluded from taxable compensation under the [Act]." *Id.* at 369. Because "[w]hether CSX complied with these statutory requirements [was] outside the scope of [the] decision," we "remand[ed] for further consideration of the statutory requirements" and refund calculations. *Id.*

In a concurring opinion, Judge Jordan reiterated that "[r]elocation benefits . . . fit comfortably within this broad provision [section 3231(e)(1)(iii)]." *Id.* at 370 (Jordan, J., concurring). Judge Jordan explained that he disagreed with an interpretation of the same section in *BNSF Railway Co. v. United States*, 775 F.3d 743, 758–59 (5th Cir. 2015). In *CSX I*, the government argued that the Fifth Circuit's interpretation of section 3231(e)(1)(iii) properly considered section 3231(e)(5)—which exempts all money remuneration if it is reasonable to believe that an employee could deduct that benefit from his income, including certain moving expenses—as a specific limitation on the general exemption and as potentially superfluous under CSX's interpretation. *CSX I*, 909 F.3d at 370 (Jordan, J., concurring). The Fifth Circuit concluded that those considerations constrained the scope of section 3231(e)(1)(iii) to "payments to employees for traveling expenses and bona fide and reasonable expenses related to travel." *BNSF Ry.*, 775 F.3d at 759.

Judge Jordan rejected *BNSF Railway*'s interpretation for three reasons. First, the text of the statute was unambiguous and required no application of the general-specific or superfluity canons: "[t]he terms 'traveling,' 'bona fide,' and 'necessary' may be broad, but they are not vague." *CSX I*, 909 F.3d at 371 (Jordan, J., concurring). Second, section 3231(e)(5) was enacted nearly eight years after section 3231(e)(1)(iii), *compare* Act of Oct. 18, 1976, Pub. L. No. 94-547, § 4(b), 90 Stat. 2526 (section 3231(e)(1)(iii)), *with* Tax Reform Act of 1984, Pub. L. No. 98-369, § 531(d)(2), 98 Stat. 884 (section 3231(e)(5)), and the cross references in section 3231(e)(5) did not include moving expenses for another nine years, *see* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13213, 107 Stat. 473–74. So, Judge Jordan reasoned, section 3231(e)(1)(iii) could not have referred to a section—3231(e)(5)—that did not exist at the time of enactment. *CSX I*, 909 F.3d at 371 (Jordan, J., concurring). And it would be erroneous to assume that Congress later implicitly repealed section 3231(e)(1)(iii) when the two sections did not completely overlap. *Id.* at 371–72; *accord* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 55, at 327 (2012) ("Repeals by implication are . . . very much disfavored. But a provision that flatly contradicts an earlier-enacted provision repeals it." (internal quotation marks omitted)). Third, by separating the exemption of relocation benefits from deductibility, Congress enabled itself to suspend the deductibility of moving expenses without affecting the exemption of relocation benefits. *CSX I*, 909 F.3d at 372 (Jordan, J., concurring) (citing Act of Dec. 22, 2017, Pub. L. No. 115-97,

§ 11048, 131 Stat. 2088 (suspending the moving expense deduction for tax years 2018–25)).

On remand, the parties again filed cross-motions for summary judgment. The government conceded that in-kind relocation benefits were not "money remuneration." The parties continued to dispute whether cash relocation benefits were exempt under section 3231(e)(1)(iii). The district court concluded that most of the relocation benefits provided were for "bona fide and necessary expenses incurred or reasonably expected to be incurred in the business of the employer." 26 U.S.C. § 3231(e)(1)(iii). But the quick-sale bonuses provided by CSX—an extra amount given to employees who sold their homes quickly—did not fall within the exception. CSX does not challenge this determination on appeal.

The district court then addressed whether CSX had substantiated these amounts to qualify for the exemption. It rejected CSX's argument that the only requirement was that the amount be paid in a "separate payment" or that there be a specific indication of "the separate amounts." *See id.* Instead, it applied the Accountable Plan Regulation. *See* 26 C.F.R. § 162-2; *id.* § 31.3121(a)-3 (incorporating the requirements of the Accountable Plan in section 162-2). Through a general grant to the Secretary of the Treasury to make "all needful rules and regulations for [] enforcement," 26 U.S.C. § 7805(a), and a cross-reference to section 31.3121(a)-3, 26 C.F.R. § 31.3231(e)-1(a)(5), the district court concluded that the Accountable Plan applied to the amounts at issue. The district court then

ruled that CSX failed to meet regulatory substantiation requirements in the Accountable Plan.

CSX and the government filed a joint motion to issue a final judgment under Federal Rule of Civil Procedure 54(b). The judgment could not otherwise become final until CSX had comported with regulatory requirements involving the collection of refunds on the tax paid for in-kind relocation benefits on behalf of its employees—the most relevant of which requires notifying each employee of the refund amount and requesting consent for CSX to collect it on his behalf. *See id.* § 31.6402(a)-2; Rev. Proc. 2017-28, 2017-14 I.R.B. 1061. The district court agreed that the in-kind relocation benefits were separate from the cash relocation benefits and stock transactions. It further concluded that there was "no just reason for delay," FED. R. CIV. P. 54(b), because the potential cost of notifying the employees twice—once for the in-kind relocation benefits and once for the cash relocation benefits—outweighed the small risk of a second appeal about the precise refund amount and notification procedures. The district court issued the final judgment for the stock transactions and another for the cash relocation benefits.

## II.  STANDARD OF REVIEW

This Court reviews summary judgment orders *de novo*, "viewing all the evidence and [drawing] all reasonable inferences in favor of the non-moving party." *McKenny v. United States*, 973 F.3d 1291, 1296 (11th Cir. 2020). Summary judgment is appropriate when "there is no genuine issue as to any material fact, such that

judgment in favor of one party is appropriate as a matter of law." *Id.* (citing FED. R. CIV. P. 56(a)).

## III. DISCUSSION

As a preliminary matter, the parties dispute whether our decision in *CSX I* resolved the two issues in this appeal: whether the moving expenses were incurred in CSX's business and what, if any, substantiation requirements are applicable. Our mandate rule and the law-of-the-case doctrine bar relitigation of issues resolved explicitly or by necessary implication in an earlier appeal. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1288 (11th Cir. 2010). In *CSX I*, we remanded "for further consideration of the statutory requirements and the calculation of CSX's taxable compensation." 909 F.3d at 369. So, we did not resolve the issues presented in this appeal.

We divide our discussion in two parts. First, we explain that the text of section 3231(e)(1)(iii) includes CSX's relocation benefits because its employees incurred the expenses in their employer's business. Second, we explain that CSX and its employees do not need to meet any regulatory substantiation requirements.

### A. *Section 3231(e)(1)(iii) Includes Relocation Benefits for Employees Whose Employers Require Them to Move.*

The parties dispute whether the relocation benefits paid by CSX are for "bona fide and necessary expenses" incurred by the employee "in the business of the employer." 26 U.S.C. § 3231(e)(1)(iii). CSX argues that the plain language of the Act includes expenses incurred by an employee who relocates at the

20-12494              Opinion of the Court                    11

behest of his employer. The district court agreed; it reasoned that the expenses were necessary and incurred in good faith "in carrying out the business of the employer, i.e. moving from one area to another to perform a job function for CSX." The government argues that the historical context in which section 3231(e)(1)(iii) was enacted establishes that Congress intended to tie its meaning to the meanings of another provision in the Internal Revenue Code and of then-existing Treasury Regulations, which exclude the benefits here. We agree with CSX.

"[W]e start with the text." *White v. Lemma*, 947 F.3d 1373, 1377 (11th Cir. 2020); *see also* SCALIA & GARNER, *supra* § 2, at 56 ("The words of a governing text are of paramount concern . . . ."). The text must be interpreted "consistent[ly] with [its] ordinary meaning at the time Congress enacted the statute." *Wis. Cent.*, 138 S. Ct. at 2070 (alterations adopted) (internal quotation marks omitted). The Act exempts certain payments for expenses to employees from taxable compensation:

> [A]n amount paid specifically—either as an advance, as reimbursement or allowance—for traveling or other bona fide and necessary expenses incurred or reasonably expected to be incurred in the business of the employer provided any such payment is identified by the employer either by a separate payment or by specifically indicating the separate amounts where both wages and expense reimbursement or allowance are combined in a single payment.

26 U.S.C. § 3231(e)(1)(iii). The government does not dispute that the payments by CSX for relocation expenses took the form of "an advance, . . . reimbursement[,] or allowance" or that the payments were properly identified as required by the statute. It argues instead that the relocation benefits paid by CSX were not for "bona fide and necessary expenses" incurred by the employee "in the business of the employer." *Id.*

The text of the statute is unambiguous. A "bona fide" expense is one incurred in good faith. *See Comm'r v. Estate of Sanders*, 834 F.3d 1269, 1275 (11th Cir. 2016); *Bona Fide*, BLACK'S LAW DICTIONARY (rev. 4th ed. 1968) ("In or with good faith; . . . without deceit or fraud."). And in this context, "necessary" does not mean strictly needed but instead means only that "the expense [is] appropriate and helpful." *Comm'r v. Tellier*, 383 U.S. 687, 689 (1966) (internal quotation marks omitted); *see also Necessary*, BLACK'S LAW DICTIONARY (rev. 4th ed. 1968) ("This word . . . may import absolute physical necessity or inevitability, or. . . that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought."). The payments also correspond to expenses incurred by employees in the business of their employer.

We reject the government's argument that the expenses at issue are personal expenses as opposed to expenses incurred in CSX's business. When employees are required to travel for business, expenses for hotels are indisputably incurred in their employer's business. Hotel expenses are not materially different from moving expenses incurred when employees are required to

relocate for business. CSX's employees incurred moving expenses at the direction of their employer because CSX required them to relocate to continue their employment. And because incurring those expenses was required to perform services for CSX, the expenses were "incurred . . . in the business of [their] employer." 26 U.S.C. § 3231(e)(1)(iii). As the district court correctly explained, an "employee incurs *additional* expenses when the employee is asked to relocate." And although a moving expense might "be a personal expense under some circumstances," when a relocation is "circumscribed by company regulations, directives, and conditions, [the moving expense] lose[s] its character as a personal expense and take[s] on the color of a business expense." *Sibla v. Comm'r*, 611 F.2d 1260, 1262 (9th Cir. 1980).

The government urges us to consider not the plain text but the supposed legislative purpose instead. It argues that the history of the exemption establishes that Congress intended to tie the meaning of section 3231(e)(1)(iii) to the meaning of an income-tax deduction in a separate provision of the Internal Revenue Code, which "allow[s] as a deduction [from taxable income] all the ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business." *See* 26 U.S.C. § 162(a). Section 162(a) in turn has been interpreted by the Secretary of the Treasury to exclude the moving expenses at issue. *See* 26 C.F.R. § 1.217-2(a)(1).

This argument about "the historical origin" of the tax exemption would require us to ignore the plain meaning of section 3231(e)(1)(iii). To the extent that legislative history is useful at all

in statutory interpretation, "we do not consider legislative history when the text is clear. . . . When the words of a statute are unambiguous, . . . judicial inquiry is complete." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016) (en banc) (internal quotation marks omitted). The government does not argue that the plain language excludes the relocation benefits. *See, e.g.*, *CSX I*, 909 F.3d at 370 (Jordan, J., concurring) ("The government does not dispute that CSX's relocation benefits are generally bona fide or necessary."). In fact, the government mentions the "plain language" in its brief only when it argues that the text of section 3231(e)(1)(iii) mirrors the text of section 162(a), which governs a deduction from income taxes. We decline to "resort to legislative history to cloud a statutory text that is clear." *Villarreal*, 839 F.3d at 969 (internal quotation marks omitted).

In addition to using legislative history, the government relies on the consistent-usage canon, which states that a "word or phrase is presumed to bear the same meaning throughout a text." SCALIA & GARNER, *supra* § 25, at 170. The government argues that the textual similarities and history require us to interpret section 3231(e)(1)(iii) the same way the Secretary of the Treasury has interpreted section 162(a). But the consistent-usage canon is inapplicable.

The consistent-usage canon applies where the same word or phrase is used in two separate provisions of the same law. *Id.* § 25, at 170–73. It can also extend to two different statutes when the "timing and purpose" of the two statutes are similar and their text

is "materially indistinguishable." *BNSF Ry. Co. v. Loos*, 139 S. Ct. 893, 898–99 (2019); *see also* SCALIA & GARNER, *supra* § 25, at 173 ("If [the two distinct statutes were] enacted at the same time, and dealt with the same subject, the argument could even be persuasive."). For example, in *BNSF Railway Co. v. Loos*, the Supreme Court applied the consistent-usage canon to corresponding provisions of the Act and the Federal Insurance Contributions Act because the programs were similar in "timing and purpose." *See* 139 S. Ct. at 898–99.

By contrast, sections 3231(e)(1)(iii) and 162(a)—two different statutes—were enacted twenty-two years apart. *Compare* Act of Oct. 18, 1976, Pub. L. No. 94-547 § 4(b), 90 Stat. 2526 (section 3231(e)(1)(iii)), *with* Internal Revenue Code of 1954, Pub. L. No. 83-591, § 162, 68A Stat. 45–46 (section 162(a)). And the provisions deal with different subjects—section 162(a) provides an income-tax deduction and section 3231(e)(1)(iii) provides an exemption from withholding. *See Cent. Ill. Pub. Serv. Co. v. United States*, 435 U.S. 21, 29 (1978) (explaining that income-tax withholding "is not the same as . . . subjectability to income taxation"); *cf. CSX I*, 909 F.3d at 368 ("Congress did not choose to tax [certain benefits under the Act], even though such benefits are taxed elsewhere in the tax code."). Because section 162(a) is not a retirement withholding provision and was enacted decades before section 3231(e)(1)(iii), the consistent-usage canon does not apply.

The government finally argues that in enacting section 3231(e)(1)(iii), Congress "tapped into a well-established regulatory

framework." Citing Treasury Regulations from 1944 and 1950, the government argues that the nearly identical language in those regulations and section 3231(e)(1)(iii) proves that "Congress essentially adopted" the meaning of the regulations. *See* 26 C.F.R. §§ 31.3401(a)-1(b)(2) (income-tax withholding), 31.3121(a)-1(h) (social security), and 31.3306(b)-1(h) (unemployment tax). The government contends that the only major differences in the language of the provisions are that section 3231(e)(1)(iii) adds the word "allowance" and omits the word "ordinary." Because a word or phrase that is "obviously transplanted from another legal source . . . brings the old soil with it," *Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018) (internal quotation marks omitted), the government urges us to apply the meaning ascribed to the Treasury Regulations to section 3231(e)(1)(iii) as well.

The government's reliance on the old-soil canon is misplaced. It is not "obvious[]" that section 3231(e)(1)(iii) was transplanted from Treasury Regulations applicable to Social Security exemptions. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019). Recent Supreme Court decisions that have applied this canon involved terms that were plainly transplanted to a new legal text. *See, e.g., id.* (concluding that the power of civil contempt was inherent in the power to issue an injunction because "courts have long imposed civil contempt sanctions" to enforce injunctions); *Stokeling v. United States*, 139 S. Ct. 544, 551 (2019) (applying the old-soil canon to the word "force" when retained from one version of the Armed Career Criminal Act to another); *Hall*, 138 S. Ct. at 1128

(applying the canon to the word "consolidate" when the Federal Rules of Civil Procedure were "expressly modeled" on their relevant predecessor); *see also In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 116–17 (D.C. Cir. 2020) (Katsas, J., concurring) (applying the canon to the word "manner" when carried over in multiple versions of the statute). Here, in contrast, the Treasury Regulations include the word "ordinary," but section 3231(e)(1)(iii) does not. *See, e.g.*, 9 Fed. Reg. 14573, 14576 (Dec. 14, 1944) (exempting "[a]mounts paid specifically—either as advances or reimbursements—for traveling or other bona fide *ordinary* and necessary expenses incurred or reasonably expected to be incurred in the business of the employer" (emphasis added)). And section 3231(e)(1)(iii) includes the word "allowance," but the Treasury Regulations do not. Because "a material variation in terms suggests a variation in meaning," SCALIA & GARNER, *supra*, § 25, at 170, we cannot read the provisions identically under the old-soil canon. *See also Wis. Cent.*, 138 S. Ct. at 2071 (Courts "usually presume differences in language . . . convey differences in meaning." (internal quotation marks omitted)); *cf. Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2365 (2019) ("Nor will this Court ordinarily imbue statutory terms with a specialized common law meaning when Congress hasn't itself invoked the common law terms of art associated with that meaning.").

We also reject the government's interpretation because it excludes all relocation benefits from the scope of section 3231(e)(1)(iii), contrary to both the plain text of the statute and our

earlier decision. In *CSX I*, we concluded that relocation benefits "that comport with the statutory requirements of [section] 3231(e)(1)(iii) are excluded from taxable compensation under the [Act]." 909 F.3d at 369. Under the law of the case, at least *some* relocation benefits meet the statutory requirements. Respect for our precedent requires us not to adopt an interpretation of the statute that would effectively neuter our previous holding. *See Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1335 n.1 (11th Cir. 2020) (Newsom, J., concurring) ("[A] healthy respect for the decisions of [our] colleagues . . . counsels a fairly rigorous application of the prior-panel-precedent rule.").

The government recognizes the need to identify at least some relocation benefits that would fall within its proffered interpretation. In its view, section 3231(e)(1)(iii) does cover "amounts a railroad describes as 'relocation benefits'" in at least one circumstance: A railroad employee works in an office in city A. The railroad then requires the employee to move to city B, where the employee will work mostly from home. Under the government's interpretation, amounts paid in those circumstances as an advance, reimbursement, or allowance for home-office equipment such as "computer equipment, software programs, a desk and chair, pens and paper, etc." would count as relocation benefits and would fall within section 3231(e)(1)(iii).

This argument fails because these payments and expenses are not "relocation benefits and moving expenses." *CSX I*, 909 F.3d at 369. As the government acknowledges, the payments are for

home-office expenses. The government tries to evade this defect by arguing that what is important is what "a railroad [company] describes as 'relocation benefits.'" But *CSX I* concluded that some "relocation benefits and moving expenses [can] comport with the statutory requirements," *id.*, not some benefits that a "rail [company] describes" as a relocation benefit. And if only expenses such as home-office expenses would be exempt, then *CSX I* would have affirmed the district court because the record conclusively showed that none of CSX's relocation benefits were home-office expenses.

Also fatal to the government's position, the expenses identified by the government largely do *not* fall within section 162(a), the meaning of which is purportedly linked to the meaning of section 3231(e)(1)(iii). Besides pens and paper, the other home-office equipment has a useful life longer than one year and must be capitalized and deducted over time under other statutory provisions. *See* 26 U.S.C. §§ 167, 197. So the home-office expenses the government identifies would not even fall within its own interpretation of section 3231(e)(1)(iii).

To be sure, the conclusion here and in *CSX I*—that relocation benefits and moving expenses fall within section 3231(e)(1)(iii)—conflicts with the decision of the Fifth Circuit in *BNSF Railway. See CSX I*, 909 F.3d at 370–71 (Jordan, J., concurring). But like our colleague, we do not find the Fifth Circuit's reasoning persuasive. In *BNSF Railway*, the district court held that the plain meaning of the text governed and that the expenses need only be "provided for the employees in connection with employee

relocations required by the business of the employer." 775 F.3d at 758 (internal quotation marks omitted). The Fifth Circuit reversed on the ground that "two statutory interpretation canons"—the general-specific and the rule against superfluities—required a different interpretation. *Id.* at 759. It "conclude[d] that a more reasonable interpretation of [section] 3231(e)(1)(iii)" included only "traveling expenses and bona fide and reasonable expenses related to travel." *Id.* We disagree.

The rule against superfluities only applies when "a provision is susceptible of . . . another meaning" that avoids the superfluity. SCALIA & GARNER, *supra*, § 26, at 176. The Fifth Circuit did not explain why it disagreed with the conclusion of the district court that the plain meaning included relocation benefits and moving expenses. Nor did it explain why the text of section 3231(e)(1)(iii) was susceptible to an interpretation covering only short-term travel expenses; it stated only that its reading was a "more reasonable interpretation of [section] 3231(e)(1)(iii)." *BNSF Ry.*, 775 F.3d at 759; *but see Wis. Cent.*, 138 S. Ct. at 2074 (rejecting the Seventh Circuit's reasoning that "it would make good practical sense" to adopt an interpretation that conflicted with the ordinary meaning (internal quotation marks omitted)).

We also disagree with the Fifth Circuit's invocation of the general-specific canon, which only applies when "conflicting provisions cannot be reconciled—when the attribution of no permissible meaning can eliminate the conflict." SCALIA & GARNER, *supra*, § 28, at 183. There is no conflict between sections 3231(e)(1)(iii) and

(e)(5); "[a]t most, the subsections overlap . . . ." *CSX I*, 909 F.3d at 372 (Jordan, J., concurring). Section 3231(e)(5) exempts from compensation payments that fall within listed sections of the Internal Revenue Code, and each of those sections contains numerous provisions. One of the references is to a provision that excludes from income, among other benefits, a "qualified moving expense reimbursement." 26 U.S.C. § 132(a)(6), (g). The definition of moving expenses in section 132 is narrow and does not include the expenses here. *Id.* § 132(g); *see also id.* § 217(b)(1). But the moving expense exemption referenced in section 3231(e)(5) is only one provision of one referenced section, so giving full effect to the ordinary meaning of section 3231(e)(1)(iii) at most limits the usefulness of some of the provisions to which section 3231(e)(5) cross-references.

Finally, the government argues that, until recently, no one considered relocation benefits to fall within the exemption provided by section 3231(e)(1)(iii). But "[u]ntil [Congress] exercises [its] power, the people may rely on the original meaning of the written law." *See Wis. Cent.*, 138 S. Ct. 2074. Because the district court correctly found that the expenses at issue are necessary, "incurred[] in good faith," and incurred "in carrying out the business of the employer," we hold that the payments are covered by the exemption in section 3231(e)(1)(iii).

## B. *Because No Regulatory Substantiation Requirements Apply, CSX Is Entitled to a Refund.*

The district court concluded that the Accountable Plan Regulation directly applied. It reasoned that the Secretary had the

power to "prescribe all needful rules and regulations" to enforce the provision, 26 U.S.C. § 7805(a), and that it had done so when it directed that "reimbursement and other expense allowance amounts" were subject to the Accountable Plan, *see* 26 C.F.R. § 31.3231(e)-1(a)(5); *id.* § 162-2. The district court then concluded that the Accountable Plan was reasonable gap filling under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and that CSX failed to satisfy the Accountable Plan's requirements.

CSX argues that the district court erred. It contends that section 3231(e)(1)(iii) required it only to identify or separate the amounts paid, which it properly did. CSX contends that the statute is so clear on this matter that if additional regulatory substantiation requirements did apply—such as requiring receipts for actual expenses incurred from employees—they would be invalid.

The government, for its part, does not defend the ruling that the Accountable Plan applies here. As the government concedes, the Accountable Plan applies only to expenses that are deductible under Title VI of the Internal Revenue Code. *See* 26 C.F.R. § 31.3121(a)-3(a), (b)(1)(ii) (requiring a payment to "meet[] the requirements of section . . . 1.62-2" of the Code of Federal Regulations); *id.* § 1.62-2(d)(1) (requiring the expenses to be deductible under Title VI). Although some section 3231(e)(1)(iii) expenses are deductible under the provisions in Title VI, the moving expenses here are not. Instead, the government argues that the Accountable Plan applies "by analogy" and urges us to remand for the district court

to apply the most demanding substantiation rules in the Accountable Plan.

We decline the invitation to invent a regulatory substantiation requirement. The government's concession that the Accountable Plan does not apply dooms its argument. It contends that "there needs to be a mechanism by which expenses are monitored and verified unless the Government is forced to accept at face value any claim that a payment" satisfied the statutory requirements. (Internal quotation marks omitted.) In support, the government relies on a House Conference Report for a separate bill, enacted nearly seventeen years after section 3231(e)(1)(iii), that states that income-tax deductibility of employer-paid moving expenses would be governed by rules similar to the rules in the Accountable Plan. H.R. REP. NO. 103-213, at 592 (1993) (Conf. Rep.). The Report, it contends, shows "Congress's stated desire and expectation that the [A]ccountable [P]lan rules would be applied by analogy." But "[p]ost-enactment legislative history," which this is, is a "contradiction in terms" and "is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011); *accord Pitch v. United States*, 953 F.3d 1226, 1240 (11th Cir. 2020) (en banc). And even taken at face value, the statement does not require this Court to create and apply those rules on our own. At best, the House Report is evidence that some members of Congress (or their staff) thought the Secretary *should* promulgate similar rules. That the Secretary has not done so is dispositive.

To the extent the government argues that satisfying some additional substantiation requirement is inherently necessary to take advantage of the exemption, that argument too fails. On the government's own account, the Accountable Plan did not go into effect until July 1, 1990, nearly fourteen years after the enactment of section 3231(e)(1)(iii). *See* 54 Fed. Reg. 51021-02, 51023 (Dec. 12, 1989). And the section of the Federal Register presenting the proposal acknowledged that "before July 1, 1990, no withholding or employment tax liability will attach," noting that "[o]f course, as under existing regulations, such expenses must be identified either by making a separate payment or by specifically identifying the separate amounts." *Id.* The government's argument that some additional regulatory substantiation rules *must* attach rings hollow when the Accountable Plan allowed a grace period during which it did not impose any additional substantiation requirements.

It is unnecessary to decide whether, as CSX argues, the clarity of the identification requirement in section 3231(e)(1)(iii) prevents the Treasury from promulgating any regulation imposing additional requirements, such as regulatory substantiation requirements. *Chevron* deference applies only when "Congress delegated authority to the agency generally to make rules carrying the force of law, *and* the agency interpretation claiming deference was promulgated in the exercise of that authority." *Gonzales v. Oregon*, 546 U.S. 243, 255–56 (2006) (emphasis added) (internal quotation marks omitted). The Supreme Court has explained that the Secretary of the Treasury has the general but "explicit

authorization to prescribe all needful rules and regulations for the enforcement" of the provisions in the Internal Revenue Code. *See Mayo Found. For Med. Educ. & Rsch. V. United States*, 562 U.S. 44, 57 (2011) (internal quotation marks omitted); 26 U.S.C. § 7805(a). But it is undisputed that the Secretary has not promulgated any rule or regulation that governs the substantiation of the amounts here.

Without a regulatory substantiation rule applicable to the expenses at issue, we need not decide whether any such rule would be consistent with sections 7805(a) and 3231(e)(1)(iii). Regardless of whether an additional regulatory substantiation requirement is consistent with these provisions, CSX prevails, and "we are not in the business of issuing advisory opinions." *United States v. Johnson*, 921 F.3d 991, 1003 (11th Cir. 2019) (en banc) (alteration adopted) (internal quotation marks omitted).

We stated in *CSX I* that moving expenses must be "substantiated in accordance with the statutory requirements." *CSX I*, 909 F.3d at 369. But that statement was imprecise because the statute itself does not provide specific substantiation requirements, and that imprecise language understandably confused the parties and the district court. The identification required by the statute is not synonymous with substantiation. *See Substantiate*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To establish the existence or truth of (a fact, etc.) . . . ."); *Substantiation*, 2 BOUVIER LAW DICTIONARY (Desk ed. 2012) ("[T]he process of . . . the proof of a thing in issue by sufficient evidence." "Substantial proof, or its provision.").

Identification by separate payment or specific indication does not "establish" that the expenses fell within section 3231(e)(1)(iii). The district court understandably read *CSX I* to require application of *some* additional substantiation requirements. But there is no applicable regulatory requirement for substantiation. And a longstanding misinterpretation of section 3231(e)(1)(iii) does not give us license to create one.

## IV. CONCLUSION

We **AFFIRM IN PART** the summary judgment as it pertains to whether relocation benefits are exempt under section 3231(e)(1)(iii). We **REVERSE IN PART** the summary judgment as it pertains to CSX's need and failure to satisfy the Accountable Plan Regulation. And we **REMAND** to the district court for it to calculate the amount of CSX's refund and administer the notification process.