[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12966

_____

MARIO DEL VALLE,
ENRIQUE FALLA,
ANGELO POU,

Plaintiffs-Appellants,

CAROLINA FERNANDEZ, et al.,

Plaintiffs,

*versus*

TRIVAGO GMBH,
a German Limited Liability Company,
BOOKING.COM B.V.,
a Dutch Limited Liability Company,
GRUPO HOTELERO GRAN CARIBE,
CORPORACION DE COMERCIO Y TURISMO
INTERNACIONAL CUBANACAN S.A.,

2                    Opinion of the Court                    23-12966

GRUPO DE TURISMO GAVIOTA S.A., et al.,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-22619-RNS

————————————

Before ROSENBAUM, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Mario Del Valle, Enrique Falla, and Angela Pou, on behalf of themselves and a putative class, filed suit under Title III of the Cuban Liberty and Democratic Solidarity Act (also known as the "Helms-Burton Act") against several entities that own and operate travel websites. These entities include Defendants-Appellants Booking.com BV and Booking Holdings, Inc. ("Booking Entities"), and Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, and Orbitz, LLC ("Expedia Entities").

Plaintiffs allege that they are U.S. nationals and heirs to properties that the Cuban government nationalized after the 1959 revolution. After seizing the properties, Plaintiffs assert, the Cuban government built the Starfish Cuatro Palmas and the Memories Jibacoa Resort ("Resorts") on the confiscated land. Visitors can reserve

lodging at the Resorts through third-party travel-booking websites, including, according to the complaint, the Booking Entities and Expedia Entities. Based on these allegations, they argue, Defendants are trafficking in confiscated American property, in violation of 22 U.S.C. §§ 6023(13), 6082(a)(1)(A).

This is the second time we've considered an appeal in this case. Previously, we reversed the district court's dismissal of Plaintiffs' complaint for lack of personal jurisdiction. *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1279 (11th Cir. 2022). Now, Plaintiffs appeal the district court's grant of Defendants' motion to dismiss their complaint with prejudice for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6).

The district court ruled that Falla and Pou failed to state a claim because they alleged that they inherited their property after March 12, 1996, the date by which the Helms-Burton Act requires litigants to "acquire[] ownership of the claim" to confiscated property. *See* U.S.C. § 6082(a)(4)(B). And it held that all Plaintiffs failed to satisfactorily allege that Defendants "knowingly and intentionally trafficked" Plaintiffs' purported property.

Plaintiffs now dispute those conclusions. First, Falla and Pou contend the Helms-Burton Act's bar date does not apply to them or, in the alternative, we should equitably toll it. Second, all Plaintiffs offer three arguments for why Defendants are knowingly and intentionally trafficking in confiscated American property: (1) President Clinton's 1996 signing statement put Defendants on notice; (2) Plaintiffs' August 6, 2019, letters to Defendants put

Defendants on notice; and (3) the complaint itself put Defendants on notice.  Third, Plaintiffs assert the district court abused its discretion in dismissing their complaint with prejudice and preventing them from amending their complaint on an issue the parties had not litigated.

Defendants resist each of Plaintiffs' arguments.  They also press another reason we should affirm the district court's order: they say Plaintiffs (particularly, Del Valle) did not adequately allege ownership of the purportedly confiscated property.

After careful consideration, we affirm the district court's order dismissing Plaintiffs' complaint.  First, we affirm the dismissal of Falla's and Pou's claims because they do not satisfy the Helms-Burton Act's bar date.  Second, we reject Defendants' argument that Del Valle did not adequately allege ownership of the purportedly confiscated property.  Third, we agree with the district court that Plaintiffs have not shown that Defendants had knowingly trafficked in confiscated American property.  And fourth, we conclude the district court did not abuse its discretion in refusing to allow Del Valle to amend his complaint.  So we affirm the district court's order with respect to all Plaintiffs.

## I.

In March 1996, President Clinton signed the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, Pub. L. No. 104-114, 110 Stat. 785 (1996) (codified at 22 U.S.C. §§ 6021–6091), commonly known as the Helms-Burton Act.  Congress passed that Act in part "to protect United States nationals against confiscatory

takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. § 6022(6).

Under Title III of the Act, any person who "traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property . . . ." 22 U.S.C. § 6082(a)(1)(A). "In the case of property confiscated before March 12, 1996," though, "a United States national may not bring an action under this section on a claim to the confiscated property *unless such national acquires ownership of the claim before March 12, 1996.*" *Id.* § 6082(a)(4)(B) (emphasis added).

We've interpreted this provision to provide a definitive bar on claims acquired after that date. So we've held that heirs of allegedly trafficked property may not bring claims under Title III if they inherited that property on or after March 12, 1996. *See Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 930 (11th Cir. 2023) ("Because La Marítima was confiscated prior to 1996, and Dr. Garcia-Bengochea inherited his interest (i.e., acquired ownership of his claim) after Desiderio's death in 2000, he cannot assert a claim under Title III."); *Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939, 948 (11th Cir. Apr. 14, 2025) ("[I]ndividuals who inherited an interest in confiscated property after the cutoff date are barred from bringing a claim under the Act.").

Under our precedent, this provision bars Falla's and Pou's claims. Falla alleges that he inherited his claim to putatively confiscated property upon the death of his mother in 2004. And Pou

avers that he inherited his claim to putatively confiscated property upon the death of his mother in 2014. Because both assert that they inherited the property that forms the bases of their claims after March 12, 1996, we must dismiss their claims. *Garcia-Bengochea*, 57 F.4th at 930; *Fernandez*, 135 F.4th at 948.

By contrast, Del Valle alleges that he inherited several parcels of beachfront property in Varadero, a peninsula in Cuba, in 1968 upon the death of his father. So the bar date does not preclude his claim.

Falla and Pou argue two points to resist our application of the Act's bar date. First, they argue that Title III defines "property" to include a "future or contingent right," 22 U.S.C. § 6023(12), and they owned "future or contingent" rights to the putatively confiscated property before the bar date. And second, they contend, even if the bar date applies to them, we can equitably toll the bar date to allow their claims to proceed. They add that *Garcia-Bengochea* and *Fernandez* did not consider these two arguments, so they urge that those cases do not preclude their arguments in this appeal.

But whatever the merits of these arguments, we cannot consider them. Under our prior-panel-precedent rule, we are bound by the holdings of prior panels of this Court unless and until either the Supreme Court or we, sitting en banc, overrule them or undermine them to the point of abrogation. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). And we have "categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule," *In re Lambrix*, 776 F.3d 789, 794 (11th Cir.

23-12966                Opinion of the Court                7

2015), and refused to consider attempts to impugn a prior panel's decision based on "a perceived defect in" its "reasoning or analysis as it relates to the law in existence at that time," *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1301–03 (11th Cir. 2001)).  So neither argument enables us to avoid applying our prior precedent.

To be sure, Plaintiffs' equitable-tolling argument is distinct from our interpretation of the statute's bar provision: it is a reason to not apply the bar rather than a reason the bar does not apply. And admittedly, our prior precedent has addressed only the statutory-interpretation question.  But "[r]espect for our precedent requires us not to adopt" a new legal rule "that would effectively neuter our previous holding." *CSX Corp. v. United States*, 18 F.4th 672, 682 (11th Cir. 2021); *see Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1335 n.1 (11th Cir. 2020) (Newsom, J., concurring) ("[A] healthy respect for the decisions of [our] colleagues . . . counsels a fairly rigorous application of the prior-panel-precedent rule.").

And we've held both that "individuals who inherited an interest in confiscated property after the cutoff date are barred from bringing a claim under the Act," *Fernandez*, 135 F.4th at 948, and that "because the statute's text is plain, we have no power to waive or extend this deadline," *Garcia-Bengochea*, 57 F.4th at 931 (citation omitted).  To toll the bar date would "effectively neuter," *CSX Corp.*, 18 F.4th at 682, our holding that "we have no power to waive or extend" it, *Garcia-Bengochea*, 57 F.4th at 931.

**II.**

Because the bar date does not prohibit Del Valle's claims, we consider Defendants' argument that Del Valle did not adequately allege an ownership interest in putatively confiscated property.

In his complaint, Del Valle alleges he owns a claim to several parcels of beachfront property in Varadero, Cuba, "bordered on the West by Calle 62, the East by Calle 64, the South by a vacant lot running along Avenida Primera, and the North by the ocean." He claims ownership through his grandfather. Specifically, he alleges his grandfather, Luis Del Valle Esnard, "was one of the founders of Varadero" and owned that property. Del Valle's complaint further asserts that, upon his grandfather's passing, the property was distributed to Luis Del Valle Esnard's children, including his father, Mari Del Valle, Sr. When his father owned the confiscated property, Del Valle adds, his father built a house on it. And finally, Del Valle alleges that, upon his father's death in November 1968, his father's property was distributed to him and his brothers.

Defendants argue these allegations cannot state a claim because Del Valle did not assert facts about the alleged inheritance. In particular, Defendants urge that Del Valle had to aver where his father died and how, exactly, Del Valle "inherited" his father's interest in the Del Valle property (by will or intestate succession).

We disagree. At the motion-to-dismiss stage, Del Valle must plead only enough facts, which we accept as true, to support a "reasonable inference" that he owns a claim to the allegedly confiscated property. *See Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1207 (11th

23-12966                  Opinion of the Court                          9

Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  And Del Valle's allegations of ancestral ownership and inheritance allow for such a reasonable inference.

Del Valle identifies the geographic area of land that his grandfather bought, as well as the modern-day properties on that confiscated land.  Plus, he alleges that the land passed to his father and then to himself.

Although Del Valle does not specify whether he inherited the property through a will or intestate, the "[f]actual allegations" in the complaint render his claim to the property more than "speculative." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A natural assumption is that a father's property will one day become his son's.  We could, of course, speculate about reasons why an heir will not inherit property.  But at the motion-to-dismiss stage, we must indulge all reasonable inferences to the plaintiff's benefit.  And ancestral ownership raises a "reasonable inference," *Ashcroft*, 556 U.S. at 678, that Del Valle inherited the property.  In any event, Del Valle alleged that his family at all times had ownership over the property since Castro confiscated it.  So we must assume his family did not bequeath the property away, bolstering the conclusion that Del Valle properly inherited the alleged land.

For these reasons, we do not affirm the district court's judgment on the basis that Del Valle failed to adequately allege an interest in putatively confiscated property.

## III.

Next, we consider Del Valle's argument that his complaint adequately alleges that Defendants knew they were trafficking in confiscated American property.  Defendants' state of mind is important because a person can "'traffic[]' in confiscated property [only] if that person knowingly and intentionally does so."  22 U.S.C. § 6023(13)(A).  The Act further defines "knowingly" as having "knowledge" or "having reason to know."  *Id.* § 6023(9).  In other words, the statute imposes liability on individuals who recklessly disregard the fact that properties in which they are trafficking would belong to U.S. nationals if they had not been confiscated by the Cuban government.

That's so because "having reason to know" is a term of art that invokes a recklessness mens rea.  Notably, *Black's Law Dictionary* explains that "a person acts with reckless disregard when the actor knows or has reason to know of facts that would lead a reasonable person to realize that harm is the likely result of the relevant act."  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015) (internal quotation marks omitted) (quoting *United States v. King-Vassel*, 728 F.3d 707, 713 (7th Cir. 2013)).

The Restatement has also defined "reason to know" as denoting that an actor has enough information to "infer that the fact in question exists, or," as its comment puts it, to believe the fact in question is "so highly probable that his conduct would be predicated upon the assumption that the fact did exist."  RESTATEMENT (SECOND) OF TORTS § 12 & cmt. a (AM. L. INST. 1965).

And that level of certainty—highly probable—falls in line with the Supreme Court's recitation of recklessness principles. In this regard, the Court has explained that reckless individuals ignore a "substantial" probability that a fact is true. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011) (defining recklessness based on the Model Penal Code). For instance, the Court has interpreted the First Amendment to demand a culpability of recklessness for claims premised on the tortious publishing of false information about public officials. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). So it has held that, at a minimum, plaintiffs must prove the publisher had an "awareness of" the "probable falsity" of the published material. *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 153 (1967).

Interpretations of other portions of the United States Code confirm that we ought to apply these background principles here. For instance, when we've interpreted the False Claims Act's reckless-disregard standard, we've relied on *Black's* "reason to know" definition. *See Urquilla-Diaz*, 780 F.3d at 1058. Similarly, federal agencies have routinely considered statutes' inclusion of the phrase "reason to know" as invoking a recklessness mens rea. *See, e.g.*, 13 C.F.R. § 142.6 (fraud on the Small Business Administration); 45 C.F.R. § 2554.6 (public welfare fraud).

So if Defendants don't have information that makes Del Valle's claim to confiscated property in Cuba "substantial" or "highly probable," then Defendants are not liable.

Del Valle argues Defendants knew they were trafficking in stolen American property for three reasons: (1) President Clinton's signing statement when he signed the Helms-Burton Act placed Defendants on notice; (2) Del Valle sent Defendants letters on August 6, 2019, informing them of his claim to property in Varadero; and (3) Del Valle's complaint itself, which details his claim to ownership of confiscated property, put Defendants on notice. We reject each theory.

*First*, President Clinton's signing statement is insufficient. In that statement, according to Plaintiffs' allegations, President Clinton declared, "[A]ll companies doing business in Cuba are hereby on notice that by trafficking in expropriated American property, they face the prospect of lawsuits and significant liability in the United States." But that generic declaration about liability existing under the Helms-Burton Act does not create a "reasonable inference," *Ashcroft*, 556 U.S. at 678, that Defendants were on notice that they were trafficking in Del Valle's property specifically, that Del Valle's property was American property, or that the Castro regime had confiscated Del Valle's property.

*Second*, Del Valle's letters to Defendants do not fare much better. In those letters, Del Valle warned only that he was "the rightful owner of property located in Varadero" and "intends to sue" Defendants because they have "trafficked in the property, as those terms are defined in 22 U.S.C. § 6023, confiscated by the Cuban government from the Del Valle family." Although these letters provide more notice than does President Clinton's signing

statement, they still cannot create a "reasonable inference," *Ashcroft*, 556 U.S. at 678, that Defendants had reason to know they were trafficking in confiscated American property. That lone sentence does not identify what part of Varadero, a peninsula in Cuba, Del Valle claims is his. Defendants are left to speculate about which properties, if any, on their websites the Castro regime confiscated and which of those confiscated properties, if any, belong to Americans. So we cannot say Del Valle's letters were enough to give Defendants sufficient reason to know they were trafficking in confiscated American property.

*Third*, Del Valle's complaint, without more, does not create a "reasonable inference," *Ashcroft*, 556 U.S. at 678, that Defendants had reason to know they were trafficking in confiscated American property.[1] We acknowledge that this conclusion may seem inconsistent with the one we reached in the last section: how can Del Valle adequately allege an ownership interest in confiscated property but not allege that his complaint puts Defendants on notice that they were trafficking in confiscated American property? The answer: with different inquiries, we accept different facts as true. In the last section, we had to accept as true Del Valle's story of ancestral inheritance and indulge all reasonable inferences that come

---

[1] Defendants raise several other arguments as to why Del Valle cannot rely on his complaint to establish scienter, including that Del Valle waived the argument by failing to present it below and that complaints, as a matter of law, cannot provide notice to Defendants. We don't address these arguments because, assuming Del Valle prevails on them, he still can't establish Defendants had the requisite scienter to state a claim for relief.

from those facts. *See Polelle*, 131 F.4th at 1207. But here, in evaluating Defendants' mental state, we accept as true only the fact that Defendants received and read the complaint. And then, given the complaint's contents, we assess whether that fact could sustain a "reasonable inference," *Ashcroft*, 556 U.S. at 678, that Defendants had reason to know they were violating the Helms-Burton Act. In other words, the law does not compel Defendants to accept Del Valle's allegations as true.

So as we previewed earlier, Del Valle needed to proffer along with his complaint—or even his letters—sufficient evidence to put Defendants on notice of "substantial" or "high[]" probability that his claims are true.

Bare, unsworn assertions of property ownership, even bolstered by the story of ancestral inheritance that Del Valle's complaint includes, are not enough to put Defendants on notice of a "substantial" or "high[]" likelihood that Del Valle owns a claim to the allegedly confiscated beachfront property. Any defendant has an "obvious reason[] to doubt the veracity" of a plaintiff's naked claim to confiscated property, *cf. Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (applying a recklessness standard in a libel case): given the risk of the Helms-Burton Act's expansive liability (including, in cases of pre-complaint notice, treble damages, *see* 22 U.S.C. § 6082(a)(3)(B)(ii), (3)(C)(ii)), some plaintiffs may hope to win a quick settlement to which they may not be entitled.

Plus, the basic records that would establish a claim to property ownership—deeds, mortgage agreements, trust documents,

23-12966                Opinion of the Court                15

wills, birth certificates, and death certificates—are normally within the plaintiff's, not the defendant's, possession. So when a plaintiff does not adduce information to establish that the probability of his ownership (whether attached to a complaint or a pre-suit letter) is "substantial" or "highly probable," defendants have even more reason to be skeptical of the plaintiff's bare assertions. *Cf. Old Chief v. United States*, 519 U.S. 172, 188 (1997) (failure to satisfy factfinders' "expectations about what proper proof should be" weighs heavily in their ultimate determination).

Our recent decision in *Fernandez* offers an example of the proof we typically see a plaintiff present to establish property ownership in a Helms-Burton Act case. There, we held that a reasonable jury could conclude Fernandez owned a claim to confiscated property because she adduced sufficient evidence that she was a stockholder in confiscated companies. 135 F.4th at 949–50. We explained that a reasonable jury could so conclude because Fernandez "testified that she attended corporate meetings and received annual dividends from the business, and that her family owned property around the Bay of Mariel." *Id.* at 950. And, we added, "the Cuban government's own confiscation decree corroborate[d] Fernandez's claim." *Id.*

But that proof—detailed sworn statements to start, with corroborating documents as a plus—is lacking here. By failing to allege that he provided Defendants with such evidence, Del Valle has not adequately pled enough facts to support a "reasonable inference," *Ashcroft*, 556 U.S. at 678, that Defendants were in possession

of proof creating a "substantial" or "high[]" probability that he has a claim to confiscated property listed on Defendants' websites.

As a result, we conclude the district court properly held that Plaintiffs did not adequately allege that Defendants knowingly and intentionally trafficked in confiscated American property.

## IV.

Finally, we address Plaintiffs' contention that the district court erred in refusing to allow them to amend their complaint to adequately allege Defendants' scienter. We disagree and affirm the district court.

Federal Rule of Civil Procedure 15(a)(2) directs that courts "should freely give" leave to amend "when justice so requires." In turn, "a district court's discretion to dismiss a complaint without leave to amend is severely restricted." *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (cleaned up). When there's no prejudice to the defendant, or bad faith or undue delay on the part of the plaintiff, and amendment would not necessarily be futile, we've held, a district court abuses its discretion if it denies leave to amend. *Warner v. Alexander Grant & Co.*, 828 F.2d 1528, 1531 (11th Cir. 1987); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

But we have also made clear that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). We adopted this rule to advance the

"critically important concept of finality in our judicial system." *Id.* Under our previous rule, plaintiffs would "have two bites at the apple" on appeal because they could argue that the district court erred in dismissing their complaints and, in the alternative, that they could save their complaints through amendment. *Id.* at 543.

And here, Del Valle falls within the *Wagner* rule: His counsel neither requested leave to amend nor argued that amendment could cure the claimed deficiencies in his complaint, and now, on appeal, Del Valle seeks a second bite at the apple by arguing amendment can save his legal claims.[2] So we affirm the district court's decision to dismiss Plaintiffs' complaint with prejudice.

## V.

For these reasons, we affirm the district court's order dismissing Plaintiffs' complaint with prejudice.

**AFFIRMED.**

---

[2] We note that, in this odd posture, *Wagner*'s finality rationale may not hold much water because a new claim may accrue if Del Valle provides Defendants better notice of his rights to confiscated property. *See, e.g.*, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) (claim preclusion); *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (issue preclusion). Nevertheless, for purposes of this case, "[t]he district court did not err in dismissing the claims with prejudice" because Del Valle "had [multiple] chances to plead a plausible claim." *Plowright v. Miami Dade County*, 102 F.4th 1358, 1371 n.6 (11th Cir. 2024).